# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION AT MEMPHIS

| | |
|---|---|
| BLACK FARMERS & AGRICULTURALISTS ASSOCIATION, INC. 287 MADISON AVENUE MEMPHIS, TN  38103 | CASE NO.  2:23-cv-2527 |
| AND | JUDGE |
| | MAGISTRATE JUDGE |
| THOMAS BURRELL 436 HIGHWAY 70 WEST MASON, TN 38049 | |
| PLAINTIFFS, | |
| VS | |
| THE HONORABLE THOMAS J. VILSACK SECRETARY OF THE UNITED STATES DEPARTMENT OF AGRICULTURE 1400 INDEPENDENCE AVENUE, S.W. WASHINGTON, D.C. 20250 | |
| AND | |
| THE HONORABLE ZACH DUCHENEAUX, ADMINISTRATOR OF THE UNITED STATES DEPARTMENT OF AGRICULTURE FARM SERVICE AGENCY 1400 INDEPENDENCE AVENUE, S.W. WASHINGTON, D.C. 20250 | |
| DEFENDANTS. | |

**EMERGENCY COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**I.    INTRODUCTION**

1

Plaintiffs, the Black Farmers and Agriculturalists Association, Inc. (hereinafter "BFAA") and Thomas Burrell respectfully seek judicial review of final agency action by the United States Department of Agriculture in connection with implementation of Section 22007 of the Inflation Reduction Act (hereinafter "IRA") Pub. L. 117-169 136 Stat. 1818.  The IRA was signed into law by President Biden on August 16, 2022.  The IRA provides $2.2 Billion dollars in financial assistance to farmers, ranchers and forest landowners who prior to January 1, 2021, experienced discrimination in a USDA farm lending program. Following enactment of the IRA, USDA undertook measures to implement Section 22007.  In that connection, USDA announced on July 7, 2023, that it had promulgated a Discrimination Financial Assistance Program, (hereinafter "DFAP") Under DFAP persons discriminated against in a USDA loan program prior to January 1, 2021, are required to submit applications to DFAP administrators for financial assistance by October 31, 2023.  Plaintiffs seek an order here suspending the October 31, 2023 deadline  for the reason the deadline is  arbitrary and capricious, violative of separation of powers and Due Process. The hardship imposed by the deadline on BFAA members with legacy applications, those being submitted on behalf of deceased farmers whose heirs must obtain probate court or other judicial authority in order to apply, the complexity of the USDA application process , past experience  in relation to processing financial assistance applications and the lack of Congressional authority for the deadline,combine to render  the October 31,2023 deadline both  untenable and unlawful..

In past instances where USDA has provided financial assistance to farmers discriminated against by USDA, discrimination claimants were required to submit a mere three page application for relief financial assistance and the application window was open for significantly longer. By contrast, See, Exhibit A for a copy of the current  DFAP application. The application at Exhibit A is 40 pages in length.  The application window is a mere  116 days. There is no authority in Section

22007 for this shortened application period. The shortened application window is unjustified as Congress stated in §22007 that funds are available for financial assistance until September 30, 2031. Plaintiffs are aggrieved by the shortened application window.

## II.     HISTORY

1. Over the past several years, USDA has resolved discrimination lawsuits with several different groups of farmers. These lawsuits, challenged discrimination in USDA's lending programs. The United States Circuit Court of Appeals stated in *The Estate of Earnest Lee Boyland, et al. v. United States Department of Agriculture,* Case No. 17-5082, a case involving BFAA members, "farmers' bottom lines fluctuate with the weather and crop prices, so "many farmers depend heavily on the credit and benefit programs of the United States Department of Agriculture to take them from one year to the next." *Pigford v. Glickman* (*Pigford I*), 185 F.R.D. 82, 86 (D.D.C. 1999) (footnote omitted). If a farmer's crops fail, "he may not have sufficient resources to buy seeds to plant in the following season"; if he needs a new grain harvester, "he often cannot afford to buy the harvester without an extension of credit." Id. "Because of the seasonal nature of farming, it also is of utmost importance that credit and benefit applications be processed quickly or the farmer may lose all or most of his anticipated income for an entire year." Id.

2. The Boyland Court also stated, "public protests over discrimination in USDA's credit and benefit programs spurred the Department to investigate. That scrutiny uncovered a widespread pattern of discrimination in the Department's agricultural credit and benefit programs. In 1996, then-Secretary of Agriculture Dan Glickman appointed a Civil Rights Action Team to assess the Department's history of racial discrimination and recommend changes. See id. at 88. The Action Team documented extensive economic harm to minority farmers from discrimination in USDA programs. See id. at 86-88. That discrimination owed partly to USDA's practice of

delegating loan application decisions to small, local committees in each county. Id. at 86. The county committees were far less diverse than the communities they served. Id. at 87. USDA denied or delayed processing loan applications, approved insufficient amounts, discriminatorily denied access to loan servicing options, or imposed restrictive conditions on loans because of the applicants' race, sex, or ethnicity. See Fourth Am. Compl. 3, *Love v. Veneman*, No. 1:00-cv-02502 (D.D.C. July 13, 2012), ECF No. 160 (female farmers); Eighth Am. Compl. 2, *Keepseagle v. Veneman*, No. 1:99-cv-03119 (D.D.C. Feb. 11, 2008), ECF No. 460 (Native American farmers); Third Am. Compl. 13, *Garcia v. Veneman*, No. 1:00cv-02445 (D.D.C. June 30, 2006), ECF No. 144 (Hispanic farmers); Pigford .1, 185 F.R.D. at 87 (black farmers).  claims formed the core of the four lawsuits filed against USDA on behalf of black, Native American, women, and Hispanic farmers.

   3. In 1998, Congress responded to the farmers' predicament by lifting the time bar for farmers who had made timely efforts to seek administrative redress for credit discrimination but were stymied by the dysfunction at USDA. See 7 U.S.C. § 2279 note (Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub. L. No. 105-277, § 741, 112 Stat. 2681) ("Appropriations Act"). The Appropriations Act tolled the statute of limitations for two years after its passage from October 1998 to October 2000— for people who (1) alleged non-employment-related discrimination by USDA occurring between January 1, 1981, and December 31, 1996, and (20 had filed a complaint with USDA before July 1, 1997.

   4. To date, USDA has resolved the discrimination lawsuits of four groups of farmers. For each group, the only farmers permitted to participate in the claims-resolution processes established in response to these cases were those who had, before the suits were filed, complained in some manner of USDA's discrimination. Framework for Hispanic or Female Farmers' Claims

Process ¶¶ VIII.A VII.B, VIII.C.1 g. *Love*, No. 1:00-cv-02502 (D.D.C. Jan. 20, 2012), ECF No. 155-1 ("*Garcia/ Love* Framework"); *Keepseagle*, No. 1:99-cv-03119, 2001 W1, 34676944, at *6 (D.D.C. Dec. 12, 2001); Pigford I, 185 F.R.D. at 92.

5. USDA settled with the class of Black Farmers first, in 1999, in Pigford I. 185 F.R.D. 82. The court approved the creation of a two-track dispute resolution mechanism for distributing proceeds to claimants. Under that process, claimants with less documentary evidence of discrimination received capped payments, while claimants with more documentary evidence could seek to prove and recover actual damages. *Pigford I*, 185 F.R.D. at 95-97.

> In order to be eligible for relief, a claimant must submit his completed claim package to the facilitator postmarked within 180 days of the date of entry of this Consent Decree, except that a claimant whose claim is otherwise timely shall have not less than 30 days to submit a declaration pursuant to subparagraph (b)(iii), above, after being
>
> (g) A claimant who satisfies the definition of the class in ¶ 2(a), above, but who fails to submit a completed claim package within 180 days of entry of this Consent Decree may petition the Court to permit him to nonetheless participate in the claims resolution procedures. The Court shall grant such a petition only where the claimant demonstrates that his failure to submit a timely claim was due to extraordinary circumstances beyond his control.

*Pigford v. Glickman*, 185 F.R.D. 82 (D.D.C. 1999) (Emphasis added.

6. The process established in *Pigford I* became a template for the other cases. Next, USDA settled a class action suit with Native American farmers. See *Keepseagle*, No. 1:99-cv-03119, 2012 WL 13098692, at *1 (D.D.C. Dec. 28, 2012). Similar lawsuits by Hispanic and female farmers followed, but did not result in class-wide settlements because neither case was certified as a class action. *Garcia v. Johanns*, 444 F.3d 625 (D.C. Cir. 2006) (Hispanic farmers); *Love v. Johanns*, 439 F.3d 723 (D.C. Cir. 2006) (female farmers). Instead, USDA voluntarily created a joint claims process for both Hispanic and female farmers. See *Garcia/Love* Framework. Claimants who wished to recover under the *Garcia/Love* Framework agreed, in the claim packets

they submitted, to release their individual claims against USDA. See id. ¶ 5; Settlement Agreement, *Love*, No. 1:00-cv-02502 (D.D.C. Feb. 3, 2017), ECF No. 2751.

7.	Despite the various efforts outlined above, discrimination problems have continued to plague USDA's lending programs.

8.	As a result, Congress enacted a race-based discrimination loan-forgiveness program in the American Rescue Plan of 2021 (ARPA). Among other things, ARPA provided debt relief to "socially disadvantaged" farmers and ranchers. The phrase "socially disadvantaged" included racial classifications. To be eligible for ARPA's debt relief, farmers and ranchers had to be Black or African American, American Indian or Alaskan native, Hispanic of Latino, or Asian American or Pacific Islander. This program was codified in §1006 of ARPA.

9.	The race-based criterion for relief under §1006 of the ARPA, was challenged in multiple cases that alleged that these racial classifications violated the Equal Protection Clause of the United States Constitution. The program was therefore suspended.

10.	In response to Equal Protection challenges §1006 of the ARPA was amended by §22007 of IRA.

11. Section 22007 states:

Section 1006 of the American Rescue Plan Act of 2021 (7 U.S.C. 2279 note; Public Law 117-2) is amended to read as follows:

(e) DISCRIMINATION FINANCIAL ASSISTANCE.—In addition to amounts otherwise available, there is appropriated to the Secretary of Agriculture for fiscal year 2022, <u>to remain available until September 30, 2031</u>, out of any money in the Treasury not otherwise appropriated, $2,200,000,000 for a program to provide financial assistance, including the cost of any financial assistance, to farmers, ranchers, or forest landowners determined to have experienced discrimination prior to January 1, 2021, in. Department of Agriculture farm lending programs, under which the amount of financial assistance provided to a recipient may be not more than $500,000, as determined to be appropriate based on any consequences experienced from the discrimination, which program shall be administered through 1 or more qualified nongovernmental entities selected by the Secretary subject to standards set and enforced by the Secretary. (Emphasis added.)

12. On July 7, 2023 USDA published application guidelines to implement §22007.

13. Among these guidelines is a no exceptions October 31, 2023 application deadline.

14. For reasons explained below given the history, timing and process involved for Plaintiffs to submit an application for relief under §22007, the October 31, 2023 deadline is arbitrary, capricious, not rationally related to any legitimate governmental goal violative of separation of powers and Due Process and was not authorized by Congress. For these reasons, Plaintiffs respectfully request that this Honorable Court suspend the October 31,2023 deadline.

### III. JURISDICTION AND VENUE

15. This Court has jurisdiction over this complaint under 28 U.S.C. §1331, §2201, and 5 U.S.C. §702-706, because this case presents substantial questions of Constitutional and federal law, specifically whether Section 22007 of IRA and Defendants' implementation of that section is arbitrary and capricious, violative of Separation of Power and Due Process and authorized by Congress.

16. This Court has authority to issue a declaratory judgment and to order injunctive relief and other relief that is necessary and proper pursuant to 28 U.S.C. § 2201 and 2202.

17. Venue is appropriate in this district under 28 U.S.C. § 1391(e)(1). A substantial part of the events giving rise to this claim occurred in this district, Defendants maintain one or more offices and employees in this district, a substantial part of the property subject to this action is situated in this district, and a plaintiff resides in this district.

### IV. PARTIES

18. Plaintiff, Black Farmers & Agriculturalists Association, Inc. (BMA) is a not-for-profit organization created for the specific purpose of responding to the issues and concerns of Black ranchers in the United States and abroad. Formed in 1997, the organization has a

membership of more than one thousand live hundred (1,500) farmers nationwide, and 21 state chapters. BFAA was also organized to monitor the conduct of the U.S. Department of Agriculture and the historic 1999 class action lawsuit, *Pigford v. Glickman*, 185 F.R.D. 82 (D.D.C. 1999) (hereinafter "*Pigford*").[1]

19.     Thomas Burrell, is a farmer and President of BFAA. Mr. Burrell is representative of other BFAA members who have claims that meet Section 22007's eligibility criteria.  BFAA has among its membership individuals with qualifying claims that must be asserted on behalf of a decedents' estates. For instance BFAA has persistently pursued relief from USDA racial discrimination on behalf of the Estate of David Shelton, the Estate of Lee Sylvester Caldwell and the Estate of Earnest Lee Bayland in United States District Court, Case No. 15-cv-1112 (TSC). These claims, and others like them referred to herein as "Legacy Claims" until now have been deemed time-barred. BFAA members legacy claims may qualify for §22007 assistance.

---

[1] The historical context that gives rise to this litigation and the need for BMA was summarized by the district court in its order approving settlement as follows:

> Forty acres and a mule. That was the promise made by the government to those former slaves who wanted to farm land in the South after the Civil War. As detailed in this Court's opinion in *Pigford I*, for most African-Americans the promise of forty acres and a mule was never kept, and the United States Department of Agriculture and the county commissioners to whom it delegated so much power bear much of the responsibility for the broken promise to those African-American farmers and their descendants. *Pigford v. Glickman*, 185 F.R.D. at 85. In the early I900's, there were 925,000 African-American farmers in the United States farming 16 million acres of farmland. By the time the Court approved the *Pigford I* consent decree, there were fewer than 18,000 African-American farms in the United States and African-American farmers owned less than three million acres of land. Id. As the Court said 12 years ago in approving the consent decree," [n]othing can completely undo the discrimination of the past or restore lost land or lost opportunities" to the many African-American farmers who were part of the *Pigford I* class. Id. at 112. Historical discrimination cannot be undone, but the *Pigford I* consent decree was a significant first step, a step that had been a long time coming. And, as described earlier in this Opinion, supra at 9, nearly 16,000 African-American farmers received a total of more than $1 billion through the claims process created by the settlement of that historic case."

Docket No. 232, p. 69.
     BFAA's purpose is to assist Black farmers, many of whom are sharecroppers or descendants of sharecroppers, in connection with their understanding of and participation in this settlement process as well as to seek prospective relief on their behalf.

20. Defendant Thomas J. Vilsack is the Secretary of Agriculture. He is responsible for leading the USDA, which includes the FSA. Under Section 22007 of IRA. Defendant Vilsack is required to provide debt relief to farmers who have experienced discrimination prior to 2021.

21. Defendant Zack Ducheneaux was appointed Administrator for USDA's Farm Service Agency on February 22, 2021. In this role Ducheneaux provides leadership and direction on agricultural policy, administering loan programs, and managing conservation, commodity, disaster, and farm marketing. Programs through a national network of offices including offices in the Western District of Tennessee.

## V.     FACTS COMMON TO ALL COUNTS

22. On July 7, 2023, USDA announced DFAP, USDA issued a forty page DFAP application that must be submitted by October 31, 2023.  IRA Section §22007, which authorized DFAP financial assistance, states assistance funds are available through September 30, 2031. Section 22007 does not authorize the unduly brief application window promulgated by Defendants.

## THE RULEMAKING

23. According to USDA, following signing of the IRA, USDA undertook steps to convene listening sessions and seek public comment about the design of the program to ensure that farmers, advocates, academics, legislators. tribal governments, and other experts were heard. USDA has committed to making payments to farmers no later than early 2024.

24. With this public feedback taken into account, in March 2023. USDA announced the basic structure of the prop am. The IRA specifies that financial assistance must be delivered to impacted producers by nongovernmental program administrators.

9

25. In early May, USDA signed contracts with three vendors who, together, constitute a national administrator and four regional hubs. The vendors are working together to solicit applications from eligible farmers, provide technical assistance, and make decisions about each case (following rides set by USDA).

26. The vendors include Midtown Group, serving as the national administrator; Windsor Group, serving producers in the eastern regions of the U.S. and Analytic Acquisitions, serving the western regions. The national administrator will manage all aspects of the application process including making determinations on applications. while the regional hubs will conduct outreach and technical assistance in addition to providing recommendations on applications. Plaintiffs are within the jurisdiction of the Windsor Group.

27. Applications are due October 31, 2023 –USDA has stated, unlike in past instances such as *Pigford* there will be no extensions. The specific deadline depends on the application submission method:

- U.S. or overnight mail must be postmarked by October 31, 2023
- Efiling; by 11:59 p.m. Pacific Time, October 31, 2023
- In person, at a regional office: by 8 p.m. local time on October 31, 2023.

28. The October 31, 2023 deadline does not advance any compelling governmental interest. It is arbitrary and capricious. The deadline is unreasonable given the complexity of the application. See, Exhibits B, C and D for examples of the application form in previous instances. Section 22007 does not authorize the October 31, 2023 deadline or its no exceptions policy.

29. The deadline under Section 22007 of IRA does not advance a compelling governmental interest, invades the exclusive province of Congress and deprives Plaintiffs of Due Process. Accordingly, it may be challenged under the Administrative Procedures Act.

## VI.     LEGAL FRAMEWORK

## ADMINISTRATIVE PROCEDURE ACT

30.     Agency actions are reviewed deferentially.  Courts may not set aside or hold unlawful an agency action unless that action is <u>arbitrary</u>, <u>capricious</u>, an abuse of discretion or otherwise not in accordance with law. *Bangura v. Hansen*, 434 F. 3d 487, 502 (6th Cir. 2006) (citing 5 U.S.C. § 706(2)(A)). "An agency decision is <u>arbitrary and capricious</u> if the agency fails to examine relevant evidence or articulate a satisfactory explanation for the decision." <u>Id</u> The Court can not supply a reasoned basis for the agency's action that the agency itself has not given." *Motor Vehicle Mfrs. Assn v. State Farm Mut. Auto Ins. Co*., 463 U.S. 29, 43 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983).

31.     The Administrative Procedure Act ("APA") waives the sovereign immunity of the United States and its federal agencies for challenges to final agency action that seek relief other than monetary damages. In enables parties who are adversely affected or aggrieved by agency action to seek judicial review thereof. 5 U.S.C. §§702, 704.

32.     The APA also specifically authorizes courts to postpose the effective date of an agency action when warranted. 5 U.S.C. §705 ("[T]o the extent necessary to prevent irreparable injury, the reviewing court…may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.")

33.     Plaintiffs in this action have been adversely affected by USDA's arbitrary and capricious establishment of a no exceptions rigid application filing date of October 31, 2023.

34.     The October 31, 2023 deadline is a final agency action. Immediate judicial review is respectfully requested as Plaintiffs have no other adequate remedy in Court.

35. The October 31, 2023 deadline is the consummation of USDA's implementation of Section 22007.

36. Legal consequences, a non appealable permanent bar to DFAP relief ,will flow from failure to meet the October 31, 2023 DFAP deadline.

37. Plaintiffs are aggrieved by this arbitrary deadline and hereby respectfully seek an order suspending the deadline.

## CLAIMS FOR RELIEF

## COUNT 1 (SEPARATION OF POWERS)

38. Plaintiffs reallege and incorporate by reference all prior and subsequent paragraphs.

39. Section 22007 centralizes vast power in the hands of USDA, without the ordinary protections of due process, to decide the fate of farmers who have been victimized by discrimination.

40. No principle is more central to the design of the Constitution than the separation of powers. See, *Dayton Area Chamber of Commerce, et al. v. Xavier Becerra*, S.D. Ohio Case No. 3:23-cv-00156.

41. Article I of the Constitution vests legislative Powers" in the "Congress of the United States." U.S. Const. art. 1, § 1 . Article II vests the executive power -the power to implement the laws in the President. Article III vests the judicial power the power to interpret the laws in the courts.[2] Id.

42. To protect that fundamental separation of powers, the Supreme Court has long distinguished between certain "important subjects, which must be entirely regulated by the

---

[2] Any power exercised by USDA must come from the President or be specifically authorized by Congress.

legislature itself" and "those of less interest," as to which Congress may afford the executive branch discretion "to fill up the details." Wayman v Southard, 23 U.S. (10 Wheat.) 1, 42-43 (1825). Id.

43. The Supreme Court has accordingly invalidated statutes that confer "virtually unfettered" discretion on the executive branch to control broad swaths of the private economy. *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495,542 (1935) (invalidating delegation to create code of industrial conduct that fosters "fair competition"); see also *Panama Relining Co. Ryan*, 293 U.S. 388 (1935) (invalidating delegation to ban petroleum shipments in excess of state production quotas).Id.

44. In Schechter Poultry, the Court emphasized the lack of "judicial review to give assurance that the action of the commission is taken within its statutory authority" and the absence of "appropriate administrative procedure" to ensure due process. 295 U.S. at 533, 541 . *In Panama Refining*, the Court highlighted the failure to constrain the executive branch with any "standard or rule" of decision. 293 U.S. at 418. Id.

45. Under the Supreme Court's modern precedents, a statutory delegation is invalid if it fails to constrain the agency with an "'intelligible principle.'" *Gundy v. United States*, 139 S. Ct. 21 16, 2129 (2019) (plurality op.) (*quoting J.W. Hampton, Jr, & Co. v. United States*, 276 U.S. 394, 409 (1928)). This "intelligible principle" must at least be "sufficiently definite and precise to enable Congress, the courts and the public to ascertain whether the [agency] . . . has conformed" to Congress's direction. *Yakus v. United States*, 321 U.S. 414, 426 (1944).

46. Courts have also consistently recognized that "judicial review is a factor weighing in favor of upholding a statute against a nondelegation challenge." *United Stales v. Garfinkel*, 29 F.3d 451, 458-59 (8th Cir. 1994) (quoting *United States v. Bozarov*, 974 F.2d 1037, 1042 (9th Cir. 1992)) (collecting cases). Similarly, "compliance with . . . requirements for notice and comment"

enhances public accountability and thereby functions as a check on agency discretion. *Id.; cf: Panama Ref Co.*, 293 U.S. at 415 (noting the importance of written findings).

47. A lack of due process protections exacerbates the separation-of-powers concerns raised by a broad administrative delegation.

48. There is no justification for USDA being permitted to arrogate unto itself the powers to set a firm no extensions deadline policy, when under §22007 Congress has given USDA until September 30, 2031 to expend the funds appropriated for financial assistance.

49. The October 31, 2023 violates separation of powers because it gives USDA total authority to set an arbitrary deadline.

50. Plaintiffs have been aggrieved by this unduly short ap[plication window and requests its suspension.

## COUNT 2 (DUE PROCESS)

51. Plaintiffs reallege and incorporate by reference all prior and subsequent paragraphs.

52. The United States Supreme Court has stated:

> The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be "condemned to suffer grievous loss," *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U. S. 123, 341 U. S. 168 (1951) (Frankfurter, J., concurring), and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication. Accordingly, as we said in *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U. S. 886, 367 U. S. 895 (1961), "consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved, as well as…

See, *Galdberg v. Kelly,* 397 U.S. 254 (1970).

53. The Fifth Amendment's Due Process Clause prohibits the government from depriving a person of property without adhering to constitutionally sufficient procedures. See, *Ky. Dept. of Corr. V. Thompson*, 490 U.S. 454, 460 (1989), notice and an opportunity to be heard.

14

54. The Due Process Clause requires notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965); see also, *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Due process requires procedural protections to prevent, to the extent possible, an erroneous deprivation of property. See, *Gilbert v. Homar*, 520 U.S. 924, 930-32 (1997).

55. Section 22007, as implemented by USDA, gives affected farmers no opportunity to be heard concerning reasons an application can not be submitted by October 31, 2023..

56. BFAA member legacy claims requires BFAA members to complete within the 116 day window a complex forty page application. In cases where the aggrieved farmer has died, USDA has stated heirs of these applicants must have written authority to pursue the decedent's claims. There is no authority in §22007 for such a draconian administrative deadline.

57. The DFAP deadline is unconstitutional under the Fifth Amendment and must be enjoined.

## **RELIEF REQUESTED**

By reasons of the above, Plaintiffs respectfully request that this Court:

A. Declare that the October 31, 2023 application deadline violative of separation of powers;

B. Declaire that the October 31, 2023 application deadline violative of Due Process Clause of the Fifth Amendment;

C. Immediately suspend the October 31, 2023 deadline pending resolution of Plaintiffs' declaratory judgment action;

D. Award Plaintiffs reasonable attorneys' fees and costs, plus interest and accruing thereon; and

    E.    Grant such other and further relief as the Court may deem appropriate.

 

_____
Percy Squire, Esq. (0022010)
341 S. Third Street, Suite 10
Columbus, Ohio 43215
psquire@sp-lawfirm.com
Attorney for Plaintiffs