## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| BLACK FARMERS & AGRICULTURALISTS ASSOCIATION, INC., et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) | No. 2:23-cv-2527-SHL-cgc |
| THOMAS J. VILSACK, SECRETARY OF THE UNITED STATES DEPARTMENT OF AGRICULTURE, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER DENYING PLAINTIFFS' SECOND MOTION FOR A PRELIMINARY INJUNCTION AND GRANTING DEFENDANTS' MOTION TO DISMISS

Plaintiffs Black Farmers & Agriculturalists Association, Inc. ("BFAA"); Thomas Burrell; Mary Ferguson; Claudette Jackson; and Mauzie J. Furlow (collectively "Plaintiffs"), brought this consolidated proposed class action against Defendants Thomas J. Vilsack and Zach Ducheneaux (collectively "Defendants").  (ECF No. 41.)  Before the Court are Plaintiffs' Corrected [] Second [] Motion for a Preliminary Injunction (ECF No. 54), Defendants' Consolidated Brief in Opposition to Plaintiffs' Second Motion for a Preliminary Injunction and in Support of Defendants' Cross-Motion to Dismiss (ECF No. 64-1), Plaintiffs' Reply to Defendants' Consolidated Brief (ECF No. 68), and Defendants' Reply (ECF No. 72).  For the following reasons, the Court **DENIES** Plaintiffs' Second Motion for a Preliminary Injunction and **GRANTS** Defendants' Motion to Dismiss.

**BACKGROUND**

Plaintiffs seek judicial review of a final agency action by the United States Department of Agriculture ("USDA") in connection with the implementation of Section 22007 of the Inflation Reduction Act ("IRA").  (ECF No. 41 at PageID 329.)  The IRA made available $2.2 billion in financial assistance to farmers, ranchers, and forest landowners who experienced discrimination by a USDA farm-lending program before January 1, 2021.  (Id.)  The USDA announced on July 7, 2023, that it had established a Discrimination Financial Assistance Program ("DFAP"). (Id.)  Under DFAP, people discriminated against in a USDA-loan program before January 2021 were initially required to submit applications for financial assistance by October 31, 2023.  (Id.)

Plaintiffs sought a preliminary injunction suspending the October 31, 2023 application deadline, arguing that the deadline is "arbitrary and capricious, violative of separation of powers and federal Due Process."  (ECF No. 16 at PageID 136.)  On September 22, 2023, the USDA extended the deadline until January 13, 2024.  (ECF No. 38 at PageID 311.)  As a result, Plaintiffs withdrew their motion.  (Id.)

On October 31, 2023, Plaintiffs filed a second preliminary injunction motion to enjoin Defendants from enforcing the January 13, 2024 deadline, require Defendants to accept DFAP applications on behalf of decedent's estates ("Legacy Applications"), suspend the use of the "unduly complex application," and declare that the DFAP process must also apply to housing loans.  (ECF No. 54 at PageID 457.)  On November 13, 2023, Defendants responded to Plaintiffs' Motion and filed a Cross-Motion to Dismiss, asserting that the case must be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).  (ECF No. 64.)

<u>ANALYSIS</u>

## I.      Motion to Dismiss

Defendants seek dismissal under Rule 12(b)(1) and 12(b)(6).  (ECF No. 64.)  "When a defendant moves for a motion to dismiss under both Rule 12(b)(1) and (b)(6), the court should consider the 12(b)(1) motion first because the 12(b)(6) motion is moot if subject matter jurisdiction does not exist."  <u>Damnjanovic v. United States Dep't of Air Force</u>, 135 F. Supp. 3d 601, 604 (E.D. Mich. 2015).  As explained below, Plaintiffs' claims regarding the deadline and complexity of the application are dismissed pursuant to Rule 12(b)(1) for lack of standing.  The remaining claims are dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

### A.      <u>Rule 12(b)(1)</u>

#### *1.      Legal Standard*

Defendants challenge Plaintiffs' standing to bring their claims, asserting this action must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).  (ECF No. 64-1 at PageID 553.)  A Rule 12(b)(1) motion can challenge lack of subject matter jurisdiction in two ways: a facial attack or a factual attack.  <u>Dayton Area Chamber of Comm. v. Becerra</u>, No. 3:23-cv-156, 2023 WL 6378423, at *4 (S.D. Ohio, Sept. 29, 2023) (citing <u>Abbott v. Mich.</u>, 474 F.3d 324, 328 (6th Cir. 2007)).  "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading."  <u>Id.</u> (quoting <u>Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.</u>, 491 F.3d 320, 330 (6th Cir. 2007)).  Where there is a facial attack on standing, the Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."  <u>Parsons v. U.S. Dep't of Just.</u>, 801 F.3d 701, 710 (6th Cir. 2015) (quoting <u>Warth v. Seldin</u>, 422 U.S. 490, 501 (1975)).  This "analysis must be confined to the four corners of the complaint."  <u>Id.</u> at 706.

Conversely, a factual attack allows the court to consider evidence outside the pleadings and to "weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." Becerra, 2023 WL 6378423, at *4 (quoting Carrier Corp. v. Outokumpu Oyj, 673 F.3d 430, 440 (6th Cir. 2012) (citations omitted)). A court may look to affidavits, and other materials in the record in determining whether plaintiffs have adequately demonstrated standing. Warth, 422 U.S. at 501; see also Plunderbund Media, L.L.C. v. DeWine, 753 Fed. App'x 362, 366 (6th Cir. 2018) (authorizing a review of preliminary injunction documents, such as declarations).

It appears that Defendants rely on a factual attack, arguing that Plaintiffs have not identified a single BFAA member who faces a cognizable injury-in-fact as a result of the USDA-imposed deadline or challenged eligibility criteria. Therefore, in reviewing the issue of standing, the briefing on the Preliminary Injunction and the Motion to Dismiss, as well as Plaintiffs' supporting declarations, may all be considered.

2.    *Standing*

Article III, Section 1, of the Constitution limits the jurisdiction of federal courts to hear only actual cases and controversies. Spokeo, Inc. v. Robins, 578 U.S. 330, 337 (2016); Lyshe v. Levy, 854 F.3d 855, 857 (6th Cir. 2017). Standing is an indispensable part of the case or controversy requirement of Article III. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). Standing analysis "is particularly rigorous when reaching the merits of the dispute would force the Court to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." Parsons v. U.S. Dep't of Just., 801 F.3d 701, 710 (6th Cir. 2015) (internal citations and quotations omitted). "To have standing, a plaintiff must allege (1) an injury in fact (2) that's traceable to the defendant's conduct and (3) that the courts can

4

redress." Gerber v. Herskovitz, 14 F.4th 500, 505 (6th Cir. 2021) (citing Lujan, 504 U.S. at 559–61).

The requirement that a plaintiff suffer an injury-in-fact is "the 'irreducible constitutional minimum' of standing." Ass'n of Am. Physicians & Surgeons v. U. S. Food and Drug Admin., 13 F.4th 531, 538 (6th Cir. 2021) (quoting Lujan, 504 U.S. at 560). Associations, like the BFAA, have standing to sue on behalf of one or more of their members if those members have been injured, even if the association itself is not directly impacted by a defendant's actions. Waskul v. Washtenaw Cty. Cmty. Mental Health, 900 F.3d 250, 253 (6th Cir. 2018). Thus, the association must identify at least one of its members who has standing. Ass'n of Am. Physicians & Surgeons, 13 F.4th at 543.

Plaintiffs' Second Motion for a Preliminary Injunction seeks to: 1) require Defendants to accept Legacy Applications, 2) apply the DFAP process to discrimination in housing loans, 3) enjoin Defendants from enforcing the January 13, 2024 deadline, and 4) suspend the use of the "unduly complex application." (ECF No. 54 at PageID 457.) To demonstrate Article III standing, Plaintiffs submitted declarations from the following individuals: 1) Thomas Burrell (ECF No. 28-1); 2) Mary Ferguson (ECF No. 29-1); 3) Claudette Jackson (ECF No. 29-2)[1]; and Allie Tillis (ECF No. 54-1). Each of these individuals' standing is considered before analyzing whether BFAA has associational standing.

As is explained below, Burrell and Tillis do not have standing to assert any claims, Ferguson and Jackson have standing to assert their Legacy Application claims, and Furlow has standing to bring her housing application claim.

---

[1] The declarations from Burrell, Ferguson, and Jackson were submitted in support of Plaintiffs' first Motion for Preliminary Injunction, and Plaintiffs incorporated them here by reference. Furlow is a named Plaintiff, but she did not submit a declaration.

### a.     Thomas Burrell

Burrell is a farmer and the president of the BFAA.  (ECF No. 41 at PageID 340.)  The Amended Complaint states that he "is a representative of other BFAA members who have had claims that meet Section 22007's eligibility criteria."  (Id.)  However, the Amended Complaint does not allege that Burrell is eligible for assistance or intends to file an application, but is unable to do so by the deadline.  Burrell's declaration similarly does not provide any evidence that he was injured.  Instead, he asserts that, in his capacity as BFAA president, "I have had personal involvement in the filing of multiple applications for financial assistance to remediate for racial discrimination by the [USDA] against BFAA members in connection with USDA farm lending programs."  (Id.)  Plaintiffs have not shown that Burrell has or will suffer an injury because of the January 13 deadline or any of the eligibility requirements.  Therefore, he does not have standing to pursue these claims.

### b.     Mary Ferguson and Claudette Jackson

The Amended Complaint alleges that Plaintiffs Ferguson and Jackson both have claims on behalf of decedents.  (ECF No. 41 at PageID 338.)  According to their nearly identical declarations, both are members of BFAA whose "[deceased] parents[] were farmers[] who experienced discrimination in a USDA farm loan program prior to January 1, 2021."  (ECF No. 29-1 at PageID 177; ECF No. 29-2 at PageID 180.)  Ferguson's declaration states that, before her father's death, he "was on two occasions denied financial assistance by the [USDA] in its loan programs.  The denials were based on racial discrimination."  (ECF No. 29-1 at PageID 177–78.)  Jackson's deceased father similarly allegedly "experienced racial discrimination on numerous occasions in connection with USDA loan applications."  (ECF No. 29-2 at PageID 181.)  Plaintiffs argue that both Jackson and Ferguson suffered injury because the DFAP application does not provide a method to file Legacy Applications.  (ECF No. 68 at PageID 682.)

6

Defendants contend that Jackson and Ferguson have not established that they would be eligible for DFAP, even if the program was expanded to allow Legacy Applications because they "simply assert, in conclusory (and virtually identical) language, that their relatives experienced discrimination, without explaining the nature or extent or the losses that this alleged discrimination caused." (ECF No. 64-1 at Paged 554.) According to Defendants, "[t]hese assertions do not establish that either would be eligible for the Program even if their challenges were successful, and so fail to establish that these policies injured them." (Id.)

Although the allegations regarding the discrimination that Jackson and Ferguson's relatives experienced are not particularly fleshed out, they are sufficient to establish an injury at this stage. Because Jackson and Ferguson are prevented from seeking relief on behalf of their deceased relatives under DFAP's current policies prohibiting Legacy Applications, they have alleged an injury that is traceable to Defendants' conduct and redressable by the Court. Gerber v. Herskovitz, 14 F.4th at 505 (citing Lujan, 504 U.S. at 559–61). Jackson and Ferguson have established standing to challenge DFAP's policy on Legacy Applications.

However, neither Plaintiff has shown that the January 13 deadline would cause them injury. Both state in their declarations that the original October 31, 2023 deadline does not allow enough time for them to complete the probate process. (ECF No. 29-1 at PageID 179; ECF No. 29-2 at PageID 182.) However, Defendants point out that because DFAP does not accept Legacy Applications, there is no probate requirement. (ECF No. 64-1 at PageID 556.) If Plaintiffs are successful in their challenge to the prohibition of Legacy Applications, it does not necessarily follow that they would be injured by the means by which Legacy Applications would be considered. Rather, it is simply speculation that DFAP would require the probate process to be completed, which is insufficient to demonstrate standing. See Kanuszewski v. Mich. Dep't of Health & Hum. Servs., 927 F.3d 396, 410 (6th Cir. 2019) ("'[M]ere[] speculat[ion] and . . .

assumptions about' how the government will operate one of its programs is not a sufficiently particularized harm to meet the injury-in-fact requirement.")  Thus, neither Ferguson nor Jackson have standing to challenge the January 13 deadline.

### c.      Mauzie Furlow

Mauzie Furlow is the only Plaintiff identified in the Amended Complaint who claims to have experienced discrimination when applying for a USDA housing loan.  (ECF No. 41 at PageID 338.)  Although the Amended Complaint includes few facts regarding this alleged discrimination, and Plaintiffs do not include a declaration from Furlow, the allegations in the Amended Complaint are sufficient to allege an injury in fact for standing purposes.  Furlow has standing to challenge DFAP's exclusion of housing loan applications.

### d.      Allie Tillis

In support of their Second Motion for Preliminary Injunction, Plaintiffs also submitted a declaration from Allie Tillis.  (ECF No. 54-1.)  Tillis challenges the timing and complexity of the DFAP application, as well as the exclusion of housing loans from the program.  However, Tillis is not a Plaintiff in this case, nor is she a member of BFAA.  (ECF No. 54 at PageID 475) (referring to Tillis as a BFAA "associate").  Because she is not a plaintiff in this case, she does not have individual standing; because she is not a member of BFAA, BFAA cannot rely on her to establish associational standing, as explained in more detail below.  Ass'n of Am. Physicians & Surgeons, 13 F.4th at 543.

### e.      BFAA Associational Standing

BFAA asserts standing on behalf of its members, rather than based on injuries to itself as an organization.  Therefore, it must demonstrate that at least one of its members has suffered an injury-in-fact.  Ass'n of Am. Physicians & Surgeons, 13 F.4th at 543.  To establish associational standing, the association must show that "[1] its members would otherwise have standing to sue

in their own right, [2] the interests at stake are germane to the organization's purpose, and [3] neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Waskul, 900 F.3d at 254–55 (citing Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 343 (1977) (internal quotation marks omitted)).  Defendants do not contest the second and third associational standing requirements for the purposes of this Motion.

As for the first requirement, as stated above, two BFAA members, Jackson and Ferguson, have standing to challenge DFAP's failure to consider Legacy Applications.  Similarly, Furlow, a BFAA member, has standing to challenge the exclusion of housing loan applications.  Therefore, BFAA has associational standing as to the Legacy Application and housing loan claims.

However, Plaintiffs offer no BFAA member who has standing to challenge the January 13 deadline or the complexity of the application.  Burrell does not have standing to pursue any claims because he does not intend to file an application.  Tillis is not a member of BFAA, thus BFAA cannot rely on her declaration to establish associational standing.  The only specific allegations regarding Furlow in the Amended Complaint concern housing loan applications and she did not submit a declaration.  Neither Jackson nor Ferguson refer to the complexity of the application in their declarations, and, as stated above, they do not have standing to challenge the January 13 deadline.  Thus, the BFAA only has standing to pursue the Legacy Application and the housing loan claims.

As a result, Plaintiffs' claims regarding the application complexity and deadline are dismissed for lack of standing pursuant to Rule 12(b)(1).  Given this result, only the Legacy Application and housing loan claims are analyzed under Rule 12(b)(6).

B.   Rule 12(b)(6)

1.   *Legal Standard*

Defendants also argue that the case should be dismissed for failure to state a claim under Rule 12(b)(6).  (ECF No. 64-1 at PageID 557.)  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The complaint must contain sufficient facts to "state a claim to relief that is plausible on its face," meaning it includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556, 570 (2007)).  The complaint need not set forth "detailed factual allegations," but it must include more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," and "'naked assertion[s]' devoid of 'further factual enhancement.'"  Id. (citing Twombly, 550 U.S. at 555, 557).

Federal Rule of Civil Procedure 12(b)(6) allows the Court to dismiss a complaint for failure to comply with the requirements of Rule 8(a)(2).  Fed. R. Civ. P. 12(b)(6).  When considering a 12(b)(6) motion, the Court must accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff.  Adkisson v. Jacobs Eng'g Grp., Inc., 790 F.3d 641, 647 (6th Cir. 2015) (internal citation omitted).

2.   *Failure to Present Claims to Agency*

As an initial matter, Defendants argue that Plaintiffs' claims should be dismissed because Plaintiffs failed to raise their specific arguments before the USDA.  (ECF No. 64-1 at PageID 557.)  Plaintiffs counter by arguing that "Jackson and Ferguson attended multiple USDA DFAP workshops and informed USDA officials of their desire to file on behalf of their descendants." (ECF No. 68 at PageID 687.)  Plaintiffs also suggest that previous litigation between BFAA and

the USDA "concerning the interests of Black decedent[]s who lost farm land as a direct result of the USDA" should have put the agency on notice.  (Id.)

"The administrative waiver doctrine, commonly referred to as issue exhaustion, provides that it is inappropriate for courts reviewing agency decisions to consider arguments not raised before the administrative agency involved."  Coal. for Gov't Procurement v. Fed. Prison Indus., 365 F.3d 435, 461–62 (6th Cir. 2004); see also United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 37 (1952) ("Simple fairness . . . requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice."); Michigan Dep't of Env't Quality v. Browner, 230 F.3d 181, 183 n.1 (6th Cir. 2000) (concluding that issues not raised during the agency's notice and comment period were waived for purposes of appellate review).  However, the Supreme Court has limited the application of the administrative waiver doctrine to three scenarios: 1) a statutorily-imposed issue exhaustion requirement, 2) an issue exhaustion requirement imposed by an agency's regulations, and 3) a judicially-imposed issue exhaustion requirement.  Coal. for Gov't Procurement, 365 F.3d at 462–63 (citing Sims v. Apfel, 530 U.S. 103, 107–09 (2000).

There is no issue exhaustion requirement in either the IRA's organic statute or its regulations.  Thus, the Court turns to whether a judicially-imposed issue exhaustion requirement is appropriate.  Coal. for Gov't Procurement, 365 F.3d at 463 (citing Sims, 530 U.S. at 107–09).

A court should impose an issue exhaustion requirement when the administrative proceeding is similar to traditional litigation—"that is, [where] the proceeding before the administrative agency is sufficiently 'adversarial,' as opposed to 'inquisitorial.'"  Id. at 643 (quoting Sims, 530 U.S. at 109–10) ("[T]he desirability of a court imposing a requirement of issue exhaustion depends on the degree to which the analogy to normal adversarial litigation

11

applies in a particular administrative proceeding."). Although the USDA "provided an exhaustive public process before establishing the conditions of the Program," (ECF No. 64-1 at PageID 557) that process is not adversarial. See Notice of Request for Public Comment, 87 Fed. Reg. 62,359 (Oct. 14, 2022). In its Notice of Request for Public Comment, the USDA states: "To help us design and implement policy to best provide the direct support called for by this provision, USDA is seeking input from the public to ensure that relevant information is considered." Id. Through this process, the USDA is seeking information to shape its policy. There is nothing in this process that can reasonably be defined as adversarial.

Although Plaintiffs do not contend that they participated in the notice and comment process, because that process is non-adversarial, this failure does not warrant a judicially-imposed issue exhaustion requirement. Therefore, Defendants' Motion to Dismiss based on Plaintiffs' failure to present their claims to the agency is **DENIED**.

### 3.  *Failure to State a Claim*

In the alternative, Defendants argue that Plaintiffs' claims should be dismissed for failure to state a claim. In their Amended Complaint, Plaintiffs allege that DFAP's exclusion of Legacy Claims and housing loans violates the Administrative Procedure Act ("APA"), separation of powers, and Due Process. (ECF No. 41 at PageID 343–44, 347–48.) Each argument is addressed below.

### a.   APA

In their Amended Complaint, Plaintiffs assert that the ineligibility of Legacy Applications and housing loans is arbitrary and capricious under the APA. The APA states that, when reviewing agency actions, "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. "Under what [the Supreme Court has]

12

called this 'narrow' standard of review, . . . an agency [must] 'examine the relevant data and articulate a satisfactory explanation for its action.'" <u>Tennessee v. United States Dep't of Agric.</u>, No. 3:22-cv-257, 2023 WL 3048342, at *14 (E.D. Tenn. Mar. 29, 2023) (quoting <u>F.C.C. v. Fox Television Stations, Inc.</u>, 556 U.S. 502, 513 (2009). But "a court is not to substitute its judgment for that of the agency and should uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." <u>Fox Television Stations, Inc.</u>, 556 U.S. at 513–14 (quoting <u>Bowman Transp., Inc. v. Ark.–Best Freight Sys., Inc.</u>, 419 U.S. 281, 286 (1974) (internal quotations omitted)).

As Defendants point out, the ineligibility of Legacy Applications and housing loans comes from Congress's language in appropriating the funds, not from the USDA. (ECF No. 64-1.) Section 22007 of the IRA states that Congress appropriated funds "for a program to provide financial assistance, including the cost of any financial assistance, to farmers, ranchers, or forest landowners determined to have experienced discrimination prior to January 1, 2021, in Department of Agriculture farm lending programs." Pub. L. No. 117-169, § 22007, 136 Stat. 1818, 2023 (2022).

The plain language of Section 22007 makes clear that it is designed to provide financial assistance to claimants who have experienced discrimination; it does not permit claims on behalf of others, including estates. Moreover, the word "assistance" means "[t]he act of helping or aiding." <u>Assistance</u>, Black's Law Dictionary (11th Ed. 2019). The use of the word assistance, rather than compensation, supports the idea that the funding was intended to provide prospective relief for living farmers, rather than to compensate the families of deceased ones.

In addition, as for the housing loan program, the IRA specifically refers to "farm lending programs," not housing lending programs or USDA lending programs generally. Pub. L. No. 117-169, § 22007, 136 Stat. 1818, 2023 (2022). Because "an agency may not rewrite clear

13

statutory terms to suit its own sense of how the statute should operate," the USDA's exclusion of Legacy Applications and housing loans when implementing the statute is proper.  Util. Air Regul. Grp. v. EPA, 573 U.S. 302, 328 (2014).  Thus, the Motion to Dismiss Plaintiffs' APA Claim is **GRANTED**.[2]

### b.       Separation of Powers

Plaintiffs also argue that the USDA's exclusion of Legacy Applications and housing loans violates separation of powers because "[t]here is no justification for USDA being permitted to arrogate unto itself the powers to . . . limit relief to living [Farm Service Agency] applicants." (ECF No. 41 at PageID 346.)  Plaintiffs contend that the USDA's exclusion of Legacy Applications and housing loans violates the nondelegation doctrine because it constituted an exercise of legislative power for which Congress failed to prescribe an intelligible principle to govern the agency's discretion.

"The nondelegation doctrine bars Congress from transferring its legislative power to another branch of Government."  Gundy v. United States, 139 S. Ct. 2116, 2121 (2019). However, "a statutory delegation is constitutional as long as Congress 'lay[s] down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform.'"  Id. at 2123.

As stated above, the USDA's exclusion of Legacy Applications and home loans is based on the plain language of Section 22007.  Because the USDA's implementation of the program is consistent with the plain language of the statute, it does not violate the nondelegation doctrine.

---

[2] Plaintiffs also argue that not allowing Legacy Claims conflicts with 42 U.S.C. § 1982, which states, "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."  DFAP does not violate or affect this right.

See <u>United States Dep't of Agric.</u>, 2023 WL 3048342, at *25.  As a result, the Motion to Dismiss Plaintiffs' Separation of Powers claim is **GRANTED**.

c.      **Due Process**

Finally, Plaintiffs assert in their Amended Complaint that the exclusion of Legacy Applications and home loans violates the Fifth Amendment because the USDA is depriving applicants of property without adhering to constitutionally sufficient procedures.  (ECF No. 41 at PageID 347.)

The Fifth Amendment prohibits the government from depriving an individual of "property without due process of law."  A government benefit is a property interest if there are "rules or mutually explicit understandings that support [a plaintiff's] claim of entitlement to" it. <u>Kaplan v. Univ. of Louisville</u>, 10 F.4th 569, 577 (6th Cir. 2021) (quoting <u>Perry v. Sindermann</u>, 408 U.S. 593, 601 (1972)).  "But neither a 'unilateral expectation' to enjoy the alleged property interest nor an 'abstract need or desire for it' is enough."  <u>Id.</u> (quoting <u>Bd. of Regents v. Roth</u>, 408 U.S. 564, 577 (1972)).

As stated above, the USDA policy not to accept Legacy Applications and home loans complies with the IRA.  Because Plaintiffs are not eligible for DFAP, they cannot establish a property interest of which they were deprived.  <u>Kaplan</u>, 10 F.4th at 577.  Therefore, the Motion to Dismiss Plaintiffs' Due Process claim is **GRANTED**.

**II.     Preliminary Injunction**

There are four factors the Court must balance when assessing whether to issue extraordinary relief, here a preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction."

<u>Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.</u>, 511 F.3d 535, 542 (6th Cir. 2007).  The Court is not required to explicitly consider each of these factors if one is dispositive. <u>Id.</u>  Although the party is not required to fully prove its case at this stage, it must show "more than a mere possibility of success."  <u>Id.</u> at 543 (cleaned up).

Because Plaintiffs claims are dismissed under Rules 12(b)(1) and 12(b)(6), it follows that Plaintiffs do not have a strong likelihood of success on the merits.  Thus, Plaintiffs' Motion for Preliminary Injunction is **DENIED**.

<u>**CONCLUSION**</u>

For the reasons set forth above, Court **DENIES** Plaintiffs' Second Motion for a Preliminary Injunction and **GRANTS** Defendants' Motion to Dismiss.

**IT IS SO ORDERED,** the 9th day of January, 2024.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE